# IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

TIMOTHY AND BERNADETTE LLOYD            *
10229 Peanut Mill Drive                 *
Gaithersburg, Maryland 20882-4027       *
                                        *
        Individually, and on behalf of  *
        all others similarly situated   *
                                        *
        Plaintiffs                      *
                                        *
                                        *   Case No._____
    v.                                  *   Class Action Complaint
                                        *   Jury Trial Demanded
GENERAL MOTORS CORPORATION              *
100 Renaissance Center                  *
Detroit, Michigan 48243-1006            *
                                        *
    Serve:                              *
                                        *
        The Corporation Trust, Inc.     *
        300 East Lombard Street         *
        Baltimore, Maryland 21202       *
                                        *
        and                             *
                                        *
FORD MOTOR CORPORATION                  *
300 Renaissance Ctr # 2100              *
Detroit, Michigan 48243-1401            *
                                        *
    Serve:                              *
                                        *
        The Corporation Trust, Inc.     *
        300 East Lombard Street         *
        Baltimore, Maryland 21202       *
                                        *
        and                             *
                                        *
CHRYSLER CORPORATION                    *
1000 Chrysler Drive                     *
Auburn Hills, Michigan 48326            *
                                        *

Serve:

The Corporation Trust, Inc.
300 East Lombard Street
Baltimore, Maryland 21202

Defendants

## COMPLAINT

Plaintiffs, TIMOTHY AND BERNADETTE LLOYD, by and through their attorneys, Greitzer

& Locks, Van Grack, Axelson & Williamowsky, The Law Offices of William F. Askinazi,

Esquire, MBA, and Stephen H. Ring, P.C., file this Class action complaint pursuant to Maryland

Rule 2-231 for themselves and as class representatives for all others similarly situated against

Defendants GENERAL MOTORS CORPORATION, FORD MOTOR CORPORATION and CHRYSLER

CORPORATION, and state as follows:

## THE PARTIES

1. Plaintiffs TIMOTHY AND BERNADETTE LLOYD are husband and wife residing in

Montgomery County, Maryland.

2. Defendant GENERAL MOTORS CORPORATION (hereinafter "G.M.") is a Delaware

corporation with its principal place of business in Detroit, Michigan.

3. Defendant FORD MOTOR CORPORATION (hereinafter "Ford") is a Delaware corporation

with its principal place of business in Detroit, Michigan.

4. Defendant CHRYSLER CORPORATION (hereinafter "Chrysler") is a Delaware corporation

with its principal place of business in Auburn Hills, Michigan.

5. Defendants design, manufacture, assemble, market, distribute and sell motor vehicles.

2

## JURISDICTION AND VENUE

6.   Defendants regularly conduct business, including the distribution and sale of motor vehicles, in Maryland and in Montgomery County.

7.   This Court has jurisdiction under CJ §6-103(b).

8.   Venue is proper under CJ §§6-201 and 6-202(3).

## CLASS ACTION ALLEGATIONS

9.   The term "Class Vehicle" means a motor vehicle included in the list attached hereto as Exhibit A.

10.   "SRM" means single recliner mechanism, which is a device, controlled by a manual adjuster lever, that fixes the angle of a Seat backrest.

11.   The term "Seat" means a seat that has the Defect and has been installed in a Class Vehicle as original equipment.  [See Exhibit B, photos of the SRM and the unsupported inboard seat pivot, from a 1995 Geo Metro as an exemplar Class Vehicle; and Exhibit G, an actual Seat.]

12.   The term "Defect" means that design feature of a Seat whereby it has an SRM on the outboard side and no equivalent device on the inboard side.

13.   The Class consists of all Maryland residents who own a Class Vehicle, excluding  i) all persons or entities who have already commenced an individual civil action related to the subject matter of this suit, ii) all persons who have suffered personal injury as a result of the rearward collapse of a Seat; iii) the officers, directors, agents, controlled persons, servants or employees of Defendants, and of all entities which are a parent, subsidiary or affiliate of any of Defendants; and  iv) members of the immediate families of all persons

3

covered in iii) above.

14. The term "Class Member" means an individual who is a member of the Class, and includes the class representatives.

15. The Seats are defective and unreasonably dangerous because they are unstable and susceptible to rearward collapse in the event of a rear-end collision. This instability creates an unreasonable risk of increased serious injury or death to occupants, over and above any injuries that would otherwise result from the rear-end impact if the Defect did not exist.

16. The design and structure of all Seats is substantially identical, with no significant variations among Class Vehicles relevant to this action.

17. There are more than 500,000 Class Vehicles in operation in Maryland.

18. The members of the Class are so numerous that joinder of all members is impractical.

19. The class representatives own a Class Vehicle and are appropriate representatives of the Class. They will fairly and adequately protect the interests of the Class, and have no interest that is contrary to or in conflict with those of the Class. They have retained attorneys who are experienced and skilled in Class action litigation. (See Statements of Qualifications of Counsel attached hereto as Exhibit C). They assert claims herein that are typical of the claims of the Class, in that they and every Class member seek an award of compensatory damages measured by the reasonable cost of replacing or modifying the Seats to render them non-defective.

20. Questions of fact and law predominate over any questions affecting only individual Class Members. Common questions of fact include the following:

a.    Whether the SRM in the Seats is defective in design.

b.    Whether the Seats are defective in design.

c.    Whether and when Defendants knew or should have known of any defect.

d.    Whether Defendants knew or should have known that the design of the Seats using an SRM rather than dual mechanisms created an unreasonable risk that the backrest would collapse following a rear impact to the vehicle.

e.    Whether it has been shown by crash tests and research that the design of the Seats, using an SRM rather than dual mechanisms creates an unreasonable risk that the backrest will collapse following a rear impact to the vehicle.

f.    Whether Defendants knew or should have known that the design of the Seats using an SRM rather than dual mechanisms creates an unreasonable risk that occupants of the vehicle in the front or back seats would be injured as a result of foreseeable collapse of the front seat backrest following a rear-end impact to the vehicle.

g.    Whether Defendants knew or should have known that the inclusion of a properly designed recliner mechanism on both the inboard and outboard sides of the front seats of the Class Vehicles would greatly increase backrest resistance to collapse upon rear-end impact to the vehicle, and would minimize injury to the occupants.

h.    Whether the inclusion of a properly designed recliner mechanism on both the inboard and outboard sides of the front seats of the Class Vehicles is feasible and reasonably inexpensive in relation to the additional occupant protection that would result.

i.    Whether the feasibility and effectiveness of a seat design that includes a properly

5

designed recliner mechanism on both the inboard and outboard sides of the front

seats of motor vehicles has been demonstrated by any automobile manufacturers.

j.  Whether the number and type of reported instances of backrest collapses is

sufficiently high to suggest that the Seat design creates an unreasonable risk of

collapse.

k.  Whether Defendants have concealed from consumers a known risk of injury from

the collapse of Seat backrests in Class Vehicles.

21.  Common questions of law include the following:

a.  Whether Defendants' conduct as described herein constitutes breach of warranty.

b.  Whether Defendants' conduct as described herein constitutes tortious

concealment, failure to warn, or misrepresentation.

c.  Whether Defendants' conduct as described herein constitutes fraud.

d.  Whether Defendants' conduct as described herein constituted, or was part of, a

civil conspiracy.

e.  Whether Defendants' conduct as described herein violated the Maryland Consumer

Protection Act (CL §13-101et seq.).

f.  Whether Defendants' conduct as described herein constitutes negligence.

g.  Whether Defendants' conduct as described herein renders them liable in strict

liability.

h.  Whether retro-fitting the Seats with dual recliner mechanisms, or replacement of

the Seats is the most appropriate remedy that feasibly corrects the Defect.

i.  The amount of compensatory damages to which the Class Members are entitled.

22.  The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications that would establish inconsistent standards of conduct for Defendants.

23.  The prosecution of separate actions by the individual members of the Class would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of the other members not parties to those actions, or could substantially impair or impede their ability to protect their interests.

24.  A class action is superior to other available means for the fair and efficient adjudication of the claims presented by this Complaint. This forum is appropriate for the litigation of the claims of the entire Class. The certification criteria of Maryland Rule 2-231 are met, and certification of the above-defined Class is appropriate.

## ALLEGATIONS OF FACT

25.  Defendants designed the Seats in such fashion as to render them unreasonably unsafe due to the Defect. In particular, the design calls for an SRM on the outboard side of the Seat only, with no mechanism on the inboard side to resist rearward collapse of the backrest. When a Class Vehicle is struck from the rear by another vehicle, the force of the occupants' bodies against the backrests of the Seats can result in the rearward collapse of the backrests due to the Defect. This collapse of the backrest can result, and in many cases has resulted, in neck and back injuries, paraplegia, quadriplegia, and even death. The risk created by the Defect is aggravated by the following additional design flaws:

   a.  The Seat design calls for an SRM having teeth of minimal depth and width,

7

providing inadequate resistance to rearward collapse. The SRM contains shallow teeth around the periphery of a metal disc that is attached to the backrest. Those teeth engage similar teeth on the base of the adjuster lever. In normal use, when the adjuster lever is pulled upward the two sets of teeth disengage, and when it is released they re-engage, thereby fixing the angle of the backrest. In the event of a rear-end impact the force of the occupant against the backrest causes the unsupported inboard side of the Seat to torque backward. The inadequate design of the teeth as described above, in combination with the Defect, facilitates the disengagement of the teeth in the SRM, and the consequent rearward collapse of the backrest.

b.   The Seat design calls for an inadequate tubular frame and inadequate bracing, in many cases creating structural discontinuity and design imbalance, allowing greater flexion of the inboard side of the Seat, which in turn facilitates the rearward collapse of the backrest.

26.   At all times relevant to this action Defendants were aware of the following facts:

a.   It is reasonably foreseeable that the Class Vehicles will be involved in collisions with other motor vehicles;

b.   Automobile manufacturers have a duty to design vehicles to keep their occupants reasonably safe in collisions;

c.   The failure to design the Seats with dual recliner mechanisms renders the Seats unreasonably unsafe due to the risk of increased injuries from rearward seat collapse following a rear-end impact to the vehicle;

8

d.    The inclusion of properly designed dual recliner mechanisms would greatly increase the resistance to rearward collapse of the backrest, and would minimize injury to the occupants;

e.    The implementation of properly designed dual recliner mechanisms is inexpensive, feasible, and could easily be included in the design and manufacture of the vehicle;

f.    The minimal expense and impact on the manufacturing process that would result from the inclusion of properly designed recliner mechanisms on both sides of the seat are inconsequential, especially in comparison to the substantial gains in occupant safety that would be achieved;

g.    Properly designed recliner mechanisms on both the inboard and outboard sides of seats in motor vehicles have been included in the design of vehicles that are not Class Vehicles, with improved safety;

h.    Crash tests and research demonstrate that seat design using an SRM creates an unreasonable risk of increased harm to occupants.

i.    Numerous instances of unwanted backrest collapses in Class Vehicles have been reported to Defendants.

j.    Numerous instances of severe injuries and deaths resulting from rearward seat collapses in Class Vehicles during rear-end collisions, preventable if the vehicle design had included properly designed dual recliner mechanisms, have been reported to Defendants.

27.    Despite their awareness of the facts alleged above, Defendants considered on several

occasions whether to include recliner mechanisms on both sides of the Seats, recognized the merits of such an improved design, but on each occasion made a conscious and deliberate decision against that change.

28.    Each of the decisions made by Defendants as described in the preceding paragraph was based either entirely or in part on the rationale that the aggregate cost of using dual recliner mechanisms would exceed the cost of defending and paying claims arising from seat collapse cases.

29.    Defendants knowingly and intentionally concealed from the public the foreseeable risk of harm from Seat collapses in Class Vehicles.

30.    As a result of the Defect, the Class Members have suffered economic loss in that a) the Class Vehicles and the Seats have failed to meet reasonable consumer expectations by virtue of the Defect, and b) the Class Vehicles and the Seats pose an unreasonable risk of serious injury or death to the Class Members, over and above any other injury that may result from a rear-end collision in the absence of the Defect, and c) in order to avoid the harm posed by the Defect, it would be necessary for the Class Members to incur the expense of alternate transportation, or the expense of correcting the Defect.

## COUNT I - NEGLIGENCE

31.    The allegations in the preceding paragraphs are hereby incorporated by reference.

32.    At all times relevant to this action Defendants had the duty to exercise that degree of care that a reasonably prudent automobile manufacturer should use in the design of the Seats. Notwithstanding this duty, and in violation thereof, Defendants negligently and carelessly

designed the Seats, providing for no recliner mechanism on the inboard side, creating the Defect.  As a direct and proximate result of this breach of duty, occupants are unreasonably exposed to serious injury or death.

WHEREFORE, Plaintiffs Timothy and Bernadette Lloyd, individually and on behalf of the Class Members, seek judgment against Defendants for compensatory damages measured by the cost of correcting the Defect, not to exceed $5,000 for each Class Vehicle. for each Class Vehicle.

## COUNT II - STRICT LIABILITY IN TORT

33.    The allegations in the preceding paragraphs are hereby incorporated by reference.

34.    Defendants designed the Seats with the Defect, rendering them inherently dangerous and creating an unreasonable risk of serious injury or death to users. Defendants manufactured, assembled, marketed, distributed and sold the Seats with the Defect.  The Seats were in the same defective condition due to the Defect from the time they left Defendants' control until they reached the Class Members, all of whom used the Seats in the manner intended by Defendants.

35.    As a direct and proximate result of the facts alleged above,  Class Members have been exposed to an unreasonable risk of serious injury or death from the Defect and the Seats.

36.    Defendants are strictly liable in tort for all injuries, damages and losses that have or may result from the collapse of a Seat in a Class Vehicle.

WHEREFORE, Plaintiffs Timothy and Bernadette Lloyd, individually and on behalf of the Class Members, seek judgment against Defendants for compensatory damages measured by the cost of correcting the Defect, not to exceed $5,000 for each Class Vehicle.

11

## COUNT III - IMPLIED WARRANTY OF MERCHANTABILITY

37.   The allegations in the preceding paragraphs are hereby incorporated by reference.

38.   Defendants impliedly warranted that the Class Vehicles and the Seats were merchantable, safe for normal use, suitable for the ordinary and usual purposes for which they were intended, and would not create an unreasonable risk of injury to consumers. Notwithstanding this warranty, and in breach thereof, Defendants designed the Class Vehicles and the Seats with the Defect, which rendered the Seats unmerchantable and unsafe for normal use, and created an unreasonable risk of serious injury or death to Class Members.

WHEREFORE, Plaintiffs Timothy and Bernadette Lloyd, individually and on behalf of the Class Members, seek judgment against Defendants for compensatory damages measured by the cost of correcting the Defect, not to exceed $5,000 for each Class Vehicle..

## COUNT IV - NEGLIGENT CONCEALMENT AND MISREPRESENTATION

39.   The allegations in the preceding paragraphs are hereby incorporated by reference.

40.   At all times relevant to this action Defendants were aware of the following facts:

    a.   It is reasonably foreseeable that the Class Vehicles will be involved in rear-end collisions with other motor vehicles;

    b.   Automobile manufacturers have a duty to design vehicles to keep their occupants reasonably safe in collisions;

    c.   The failure to design the Seats with properly designed dual recliner

mechanisms on both sides of the front seats renders the Seats unreasonably unsafe due to the risk of increased injuries or death from seat collapse following rear impact to a Class Vehicle.

d.      The inclusion of a properly designed Recliner mechanism on both sides of the front seats would greatly increase the resistance to rearward collapse of the backrest, and would minimize injury to the occupants;

e.      The inclusion of a properly designed Recliner mechanism on both sides of a seat is inexpensive and could easily be included in the design and manufacture of the vehicle;

f.      The minimal expense and impact on the manufacturing process that would result from inclusion of a properly designed Recliner mechanism on both sides of the seat are inconsequential relative to the gains in occupant safety that would be achieved;

g.      The inclusion of a properly designed Recliner mechanism on both the inboard and outboard sides of seats in motor vehicles has been successfully included in the design of vehicles that are not Class Vehicles;

h.      Crash tests and research demonstrate that seat design using a Recliner mechanism on only one side creates an unreasonable risk of increased harm to occupants.

i.      Numerous instances of unwanted backrest collapses in Class Vehicles have been reported to Defendants.

j.      Numerous instances of severe injuries and deaths resulting from seat

13

collapses in Class Vehicles, preventable if the vehicle design had included

properly designed Recliner mechanisms on both sides of the Seat, have

been reported to Defendants.

41.    Having knowledge of the facts recited in subparagraphs a through j above, Defendants had

the duty to notify Class Members of the Defect in a reasonable fashion to avoid deceiving

them, and to enable them to make an informed decision as to whether to purchase of a

vehicle containing a known Defect that could unreasonably expose them to serious injury

or death.. Notwithstanding this duty, and in violation thereof, Defendants negligently and

carelessly concealed and failed to notify Class Members of the Defect or to allow them a

reasonable opportunity to decide whether to purchase Class Vehicles with the Defect.

Further, Defendants misrepresented to Plaintiffs that the Class Vehicles, including the

Seats, were safely designed.

42.    As a direct and proximate result of Defendants' negligent concealment and

misrepresentation as alleged above, Class Members were exposed to an unreasonable risk

of serious personal injury and death created by the Defect.

WHEREFORE, Plaintiffs Timothy and Bernadette Lloyd, individually and on behalf of the

Class Members, seek judgment against Defendants for compensatory damages measured by the

cost of correcting the Defect, not to exceed $5,000 for each Class Vehicle..

## COUNT V - FRAUD

43.    The allegations in the preceding paragraphs are hereby incorporated by reference.

44.    At all times relevant to this action Defendants were aware of the facts recited in

14

subparagraphs a through j of the preceding Count. Notwithstanding this knowledge, and with the intent to deceive the Class Members into purchasing Class Vehicles without knowledge of the Defect, Defendants concealed information about the Defect and falsely represented to the Class Members that the Class Vehicles and the Seats were safe for normal use.

45.    The Class Members justifiably relied on Defendants' non-disclosures and representations, electing to purchase and operate Class Vehicles without knowledge of the Defect. There were no reasonable means for the Class Members to make themselves aware of the Defect, as Defendants remained in peculiar control of the relevant information, and took steps to prevent its public dissemination.

46.    As a direct and proximate result of Defendants' non-disclosures and misrepresentations, the Class Members have been exposed to an unreasonable risk of serious injury or death during their normal use of Class Vehicles, and will remain so exposed unless they cease using the Class Vehicles or the Defect is remedied.

WHEREFORE, Plaintiffs Timothy and Bernadette Lloyd, individually and on behalf of the Class Members, seek judgment against Defendants for compensatory damages measured by the cost of correcting the Defect, not to exceed $5,000 for each Class Vehicle..

## COUNT VI
## UNFAIR OR DECEPTIVE TRADE PRACTICES
## MARYLAND CONSUMER PROTECTION ACT (CL§13-301, ET SEQ.)

47.    The allegations in the preceding paragraphs, and in particular the allegations of non-

disclosure, concealment, misrepresentation and fraud above are hereby incorporated by reference.

48.   Defendants engaged in fraudulent and deceptive conduct in the marketing and sale of Class Vehicles tending to deceive or mislead consumers including the Class Members.

49.   Defendants made oral and written statements that had the capacity, tendency or effect of deceiving or misleading consumers including the Class Members.

50.   Defendants failed to state material facts, including the existence of the Defect, and this failure deceived or tended to deceive consumers including the Class Members.

51.   Defendants engaged in deception, fraud, misrepresentation, knowing concealment, suppression, and the omission of material facts, with the intent that consumers including the Class Members would rely on the same, in connection with the Defendants' promotion and sale of Class Vehicles.

52.   As a direct and proximate result of Defendants' conduct the Class Members elected to purchase and operate Class Vehicles, exposing them to an unreasonable risk of serious injury or death during the normal use of their Class Vehicles.

WHEREFORE, Plaintiffs Timothy and Bernadette Lloyd, individually and on behalf of the Class Members, seek judgment against Defendants for compensatory damages measured by the cost of correcting the Defect, not to exceed $5,000 for each Class Vehicle..

## COUNT VII - CIVIL CONSPIRACY

53.    The allegations in the preceding paragraphs are hereby incorporated by reference.

54.    Defendants conspired among themselves and with others to

a.. Conceal the Defect from the public;

b. Conceal from the public and regulatory authorities information that would justify or mandate modification of the Seat design to eliminate the Defect.

c. Persuade regulatory authorities to refrain from enacting regulations that would require stricter safety requirements for automobile seats.

d. Understate or misrepresent the nature of the risk created by the Defect.

e. Avoid the use of dual recliner mechanisms in order save minimal costs, with full knowledge of the fact that consumers would be thereby unreasonably exposed to serious injury or death.

WHEREFORE, Plaintiffs Timothy and Bernadette Lloyd, individually and on behalf of the Class Members, seek judgment against Defendants for compensatory damages measured by the cost of correcting the Defect, not to exceed $5,000 for each Class Vehicle..

GREITZER & LOCKS, by

Martin Greitzer

Marc Weingarten

Jack Mason

Greitzer & Locks
1500 Walnut Street, Suite 2000
Philadelphia, Pennsylvania 19102
215-893-0100

**THE LAW OFFICES OF WILLIAM F. ASKINAZI, ESQUIRE, by**

William F. Askinazi
847E Quince Orchard Boulevard
Gaithersburg, Maryland 20878
301-990-7785

**VAN GRACK, AXELSON & WILLIAMOWSKY, by**

Steven Van Grack
110 North Washington Street, 5th Floor
Rockville, Maryland 20850
301-738-7671

**STEPHEN H. RING, P.C.**, by


Stephen H. Ring
51 Monroe Street, Suite 1800
Rockville, Maryland 20850
301-838-9060

Attorneys for Plaintiffs


## JURY DEMAND

The plaintiff requests a trial by jury as to all issues so triable.


Stephen H. Ring


19